1793 Ignite USA v. Pacific Market International 1793 Ignite USA v. Pacific Market International 1793 Ignite USA v. Pacific Market International 1793 Ignite USA v. Pacific Market International  1793 Ignite USA v. Pacific Market International May it please the Court, the context of the 233 claims is important. The claims are directed to reducing or dissipating the pressure before it leaves the lid. The content of these claims and the context of these claims are directed to managing that pressure before it exits the lid. The Prior Art Albert reference considers sequential opening, what the parties have called pre-venting, where you first open the vent and then open the drink opening. The Chafin reference that is largely at issue here is directed to venting to provide a smooth flow of fluid and to isolating the spring assembly to protect it from fouling. Neither of those Prior Art patents address the problem that was being considered by Mr. Pennelly in the 233 patent. Neither of those patents manage the release of pressure before that pressure exits the lid. Claims are to be interpreted to correspond with what and how the inventor describes his invention. Part of the problem here is that the Board and PMI took the claims out of that context. As a result, the Board has applied an unreasonably broad interpretation in terms of the claims. Let's try to take these claims and compare them to this Prior Art here at Chafin. As I understand it, the Board said that AA, BB, CC, and DT were all vent chambers, right? They all comprise the extent of the Chafin vent chamber, yes, sir. Let's assume for the moment that some or all of those are vent chambers. There are various claims in here which impose other requirements other than the presence of a vent chamber. And it would be helpful to me if you could address some of those. I'd be happy to, Your Honor. And one of them is whether this requirement of having the trigger intrude into the vent chamber is satisfied by Chafin. Because as I understand it, your theory is that the trigger of Chafin only goes into area AA and that AA is not part of the vent chamber, correct?  Doesn't Chafin also go, the trigger in Chafin go into DD? I think not, Your Honor. That would only be the case if the valve head were considered part of the trigger. And why isn't it? Because the valve head is what is affecting the seal. It's serving as the vent seal rather than the trigger. How do I know that? How do I know that that's not part of the trigger? Well, you know it because it is affecting the seal and the claim calls for there to be a vent seal. Well, it could do both, couldn't it? It could, but in Chafin, there's no concern with pressure relief before that pressure gets to the exit. So that's not an issue in Chafin. In Chafin, that part AA that is behind the valve head in no way communicates with the flow of vapor that is being exited from the container out of the cavity. That's your theory that AA is in the vent chamber, right? Yes, sir. But if the valve head in Chafin is going into area DD and DD is a vent chamber, then that requirement is satisfied, right? Then DD and CC could potentially be considered the vent chamber, yes, sir. Okay. But that's contrary to what the board found. As you noted, the board found that AA, BB and CC and DD were the extent of the Chafin vent chamber. Okay. And if AA were not considered to be part of the vent chamber because as you say, there's no possibility of steam getting into AA, what's the consequence for the board's decision if AA is not part of the vent chamber? Let's look at that in the context of the claims, Your Honor. For example, claim 23. Claim 23 calls for a second aperture providing fluid communication between the vent chamber and the trigger. That second aperture in the 233 patent is the hole through which the trigger extends. So the trigger communicates with the vapor in our invention and it could, if you will, in Chafin's language, it could be fouled. It could get dirty as a result of being in the steam of the coffee or tea or whatever's there. That second aperture has to facilitate, I'm sorry, the second aperture providing fluid communication between the vent chamber, a space for lowering pressure and the trigger. In Chafin, AA would not constitute a space between the vent chamber and the trigger. It would not meet that second aperture limitation because AA would not be part of the vent chamber. It does not provide the pressure reduction requirement. Fluid communication in claim 23 refers to fluid communication between the vapor and the trigger. In Chafin, it would only be between ambient air and the trigger. So claim 23 would be patentable. We can look at other claims to find where there was an improper, unreasonably broad interpretation adopted. For example, claim 2. Claim 2 calls for the vent seal to close access between the vent chamber and the cavity. Between the chamber and the cavity. It's somewhat similar to claim 21 in claim 5. In Chafin, it does close access between the vent chamber and the cavity. BB is the vent chamber, right? I'm not certain I understand your question, Your Honor. BB is a part of the vent chamber according to the board. But when that seal is closed, BB is always open to the cavity. That's part of our point. When BB is a part of the vent chamber, then Chafin does not show closing off access to the cavity because BB is a part of that. I'm sorry, BB is a part of the chamber, so you're not closing off access to the chamber from the cavity. And that differs, for example, their point, if you look at claim 1. Claim 1 calls for a vent seal operably closing the vent aperture from the cavity. The vent aperture is at the very top. That's the exit opening, if you will. When we get down to claim 2, we're not simply closing off the vent aperture. We're now closing off the chamber. Now, claim 1 is not at issue. The parties didn't bring that one before. But in terms of how you interpret claim 2, there's a difference between closing off the chamber and closing off the vent aperture. And Chafin does not show closing off the vent chamber for the very reason you say, which is that portion BB is always accessible to the cavity. As to all of the claims, there is a third claim construction issue that needs to be addressed. And that's that the board ignored the functional limitations in vent chamber of requiring a space for lowering the pressure. The board's definition of vent chamber has a structural and a functional limitation. The structural limitation is that there's a space having an entrance and an exit. The functional limitation is that space is for lowering pressure of the vapor. PMI's position is that anything that allows air to move in or out constitutes a vent chamber. That takes us completely out of context. It puts us in a situation, for example, where just a Starbucks lid with a slotted opening becomes a vent chamber because there's some thickness to the material. There's an entrance and an exit, as they would say, to the chamber. That's not what Mr. Pennelly was trying to invent. That's not within the context of our claims. The board likewise lost sight of the context of the claims when it said, well, Chafin has a venting operation. A venting operation does not lead to a chamber. A venting operation is simply allowing pressure to exit the lid. The board tried to fill in that gap by saying the person of ordinary skill would recognize that there's expansion, for example, into that area DD that you noticed, Judge. And that because the person of ordinary skill would be aware of PV equals NRT, the ideal gas law, that that would mean that small area of DD could, for example, serve as a vent chamber. But there's nothing in either Chafin or in the patent with which it's combined, Albert, that teaches or suggests the idea of having an area for actually managing the pressure. Merely allowing pressure to vent through the valve chamber does not teach managing that pressure before it gets to the exit. This is proven in the context of Chafin. Chafin discusses three embodiments. The second two embodiments, there's really no legitimate dispute in our mind that the second two embodiments merely show a passageway. They show a straight line tube where the valve head comes in and interrupts the flow. The first embodiment shows a jog. It shows, if you will, an elbow fitting of sorts, and the valve sits in that elbow fitting. The third embodiment, Chafin does call a vent chamber, but it's really functioning as a valve chamber. It simply receives the valve and prevents fluid from flowing out of it. Can I bring you back to claim 23 for just a moment? Certainly. Providing fluid communication between the vent chamber and the trigger. If the trigger includes the valve head and DD is part of or is the vent chamber, why isn't that satisfying? Because there's fluid communication between the vent chamber and the valve head. I don't know that I would refer to it, Your Honor, as fluid communication. The valve head would block the flow of vapor when the valve head was closed. If the valve head is part of the trigger, then the steam is getting to that part of the valve head, to the outer surface of the valve head, right? It would contact it, yes, sir. So, okay, it seems to me that's an argument as to why claim 23 would have been obvious. But then I still come back to this question of whether Chamber AA, if you're correct, that it's not part of the vent chamber, what the consequences are with respect to other claims. Aside from 23, what effect would that have on the analysis? What is shown by the board has, as to all the claims that are in dispute, Your Honor, the fact that the board has defined the term vent chamber so broadly as to include a space that does not participate in the review. The reduction of pressure shows that the board has applied an unreasonably broad interpretation of the claim language. The vent chamber, as it's called in Chafin, is a vent chamber in name only. And as for the reasons I have briefed, the name is not controlling. AA matters because if you include that as a part of your, as a part of your claim language, it's not controlling. As a part of your definition of vent chamber, it shows that you have effectively read out the language that says the vent chamber is for the lowering of pressure. Because that section is not for the lowering of pressure. And when you get to claim 23, and the thou had yes will certainly contact the pressure as it comes from this side to go up. But that portion that's behind that goes through, remember, it's the second aperture under claim 23. Provides fluid communication between the vent chamber and the trigger. That second aperture is not providing any fluid communication between the vapor that's going on the other side of the valve and the trigger. And that's what's important here, is that the vapor is what was being pushed through. I'm about to run out of time, is this as to 15 minutes or as to 10? If you want, why don't you save the rest of your time, we'll give you two minutes. I would, thank you. Mr. Handel? Yes, thank you. May it please the court. I have some problems with the board's suggestion that AA is a vent chamber or part of the vent chamber. Because it seems to me it's pretty clear that the steam, as opposed to the outside air, is not getting into space AA. It's a very good question. The claims of the 233 do not require that the pressurized gas or steam from the container cavity have access to that second aperture where the trigger goes in and out. Well, that may be true, but the board did consider AA to be a vent chamber. It seems to me that's questionable. Yes. But the basis under which they concluded that AA was part of the vent chamber is because, number one, they deemed that the entire yellow highlighted area, which is figure 1050, located on page 24 of the appellant's brief, sections AA, CC, DD, and BB, all constitute a vent chamber. And if you look at the agreed claim construction, and this is important, because counsel was trying to take you away from what they agreed to as the claim construction. The claim construction is a space having an entrance and exit for lowering a pressure of vapor or gas. It is not spaces having entrance and exit for lowering a vapor or gas. So working in normal operation, our expert, Mr. Dahlgren, has said that it's a vent chamber. Very clearly said that a person of ordinary skill would understand that in the entire structure, all of the yellow would be required vent chamber, because where else would the valve head reciprocate? Where else would the valve stem come into? And if you look at the specification of the 233 patent, and this is what I think is the most intriguing part, the trigger goes in and out of the vent chamber. The trigger in the 233 patent, and it's demonstrated in figures 16, 17, and 18, has an area behind the trigger seal. Is the valve head part of the trigger? Is the valve head part of the trigger? Yes, it is. It is. And their expert, Mr. Engel, did agree that, I'll tell you where, Appendix 2639 to 2640, and we noted it in our... Which volume is this? This is Appendix 2639 to 2640. Yeah, but which volume? Oh, I don't know which volume you have, but it's also in our reply to sum it for you. Wait a minute, 2639. Okay, that's in Volume 3, I guess, 2639. It's probably toward the back, so it would probably be later in your collection. It's his deposition testimony, pages 117, lines 20 to 23. He admitted that those structures, the valve head, 56, valve stem, and helical spring, 57 and 58, would at times be in the chafing vent chamber, which would indicate portions AA and DD. That was his testimony, and the board gave credit to that. Not only that, the board gave credit to Mr. Dahlgren, our expert, who very clearly indicated that portion A would have to be part of the vent chamber, because it is where the head would reciprocate into in order for there to be ordinary operation of that vent chamber. What council, what IGNITE is proposing, and they did this below, in the board, to the board. Was that you should look at each of these portions of this unitary structure and hold up the construction for every single portion and test it to see if it's vent chamber. Okay, but so what happens if we were to conclude that AA is not properly part of the vent chamber? Okay, well, under that hypothetical, then I still think you meet the limitations for all of the claims except for portion A. And that's number 23, which would be the second aperture where the valve stem, the second aperture where the valve stem of the trigger protrudes into the vent chamber. Well, wait, does it say valve stem in 23? No. It says... The trigger. Yeah, but it doesn't have to be the valve stem if the valve head is part of the trigger. Well, that's true, but I'm interpreting the valve stem 57 and the helical spring 58 to be part of the trigger. And so when you look at the valve head, I think you should also consider the valve stem 57 and the spring 58 as part of the trigger in Schaffen. But I disagree that portion AA is not a part of the vent chamber. That would essentially be looking at this patent, this claim as a patent for an automobile for passengers to ride in. And then deeming that the glove compartment in the passenger compartment is not part of the claim because passengers don't ride in the glove compartment. It's part of the operation of the totality of the system and the claim. And one skilled in the art, as Mr. Dahlgren testified, would understand that portion AA along with all the other portions would constitute part, would be encompassed by the vent chamber. And the board actually used that terminology. They, in looking and considering the extent of the vent chamber, they concluded on page 21 that the vent chamber 27 readily conveys that portions AA and DD are encompassed by vent chamber 27. And they relied on testimony from our expert. So it would be inappropriate on a number of levels to not accord AA vent chamber status. Most important is that it would contravene the party's agreed construction. Wow. Well, the construction is a space having an entrance and an exit for lowering the pressure of vapor or gas. It is not spaces in which each space has an entrance and an exit for the lowering of vapor or gas. Ignite is suggesting a different construction. They allude to the board over applying the agreed construction. They suggest de novo review, but there's no de novo review here, because the construction was agreed. If you agree with counsel, and we've battled a lot, he's a great guy, but I don't agree with him on that point. That you should look at each portion and test whether each portion meets the agreed construction. That's the difficulty we have. If you adhere to the agreement, the stipulation of the parties, then you have to look at, as the board below did, at the entire structure, AA through DD, as the vent chamber, because it has an entrance and an exit, and because it's an area, when the head reciprocates, it performs a lowering of pressure. I might also point out that the specification of the 233 does not describe how big the chamber has to be. The specification of the 233 does not talk about reducing pressure. The only allusion to pressure in the specification is to avoid a chimney effect, but there's no discussion as to what that means. And it only discusses chimney effect in connection with some dimensional differences between the exhaust tube and the chamber itself. To read the limitation that counsel suggests would be to import limitations into the claims of this patent, and that is impermissible, as this court has said in Continental Circuits v. Intel. If you look at the claims of the 233, none of the claims talk about reducing pressure from the cavity where the liquids are. 5, 6, and 21 talk about releasing pressure through the vent aperture. That is different than what counsel is suggesting. The claim is, of course, that area or portion 8AA be a stand-alone area portion within which you have to apply the test of venting. Do you have any questions? I'd like to touch on just a couple of other things, if you don't mind. The court, I think, Your Honor, you raised the issue about the trigger in Chafin partially extends through the vent chamber, claims 5 and 22. Here, you are right, the trigger in Chafin describes valve stem 57, helical spring 58, and valve head 56 dimensioned to project into vent chamber 27. I want to point out that our expert at Appendix 2497 to 2498, he testified that portion in his view, which is substantial evidence, and it's a substantial evidence test here. That portion 8AA of vent chamber 27, while portion 8AA is part of the vent chamber 27 of Chafin, it does not provide a volume within which gas vapor expansion occurs since fluid flow to portion 8AA is a part of the vent chamber 27 of Chafin. Portion 8AA is prevented by the valve head. However, and this is the point that you were trying to make, however, I do not believe that would cause a person of ordinary skill to understand that portion 8AA is not a part of the elongated vent chamber 27 and the vent chamber of the 233 patent. So he addressed that and the board considered it. Why is it that 8AA is part of the vent chamber if it can't accomplish venting? Because the claim doesn't require venting in chamber 8AA, in portion 8AA. It doesn't require venting in a vent chamber? Oh, no, no, no. Portion 8AA is not a vent chamber. Portion 8AA is part of the greater vent chamber. The point here is if you parse these different portions, this is what counsel wants you to do. Parse these portions and apply the claim construction of vent chamber, but it's not vent chamber. It's part of an integral, unitary system. All of the vent chamber is the area highlighted in yellow. You can't just look at one portion and say, that's vent chamber, that's not vent chamber. It serves the function. The 233 wouldn't stand up to the construction that counsel is suggesting, because in the trigger of the 233, the trigger seals, as they're reciprocated in, leave an area to the outside, which would be outside the vent chamber. That would be 8AA, and no vapor communication, no fluid communication occurs to that outside area either. It would be an inconsistent reading with their own specification to accept the proposition that portion 8AA is not vent chamber. If you don't have any other questions, I yield my time. Okay, thank you, Mr. Handel. If I may, Your Honor, I'd like to return to your question as to how do you know about the valve head and whether it's part of the trigger. If you look at appendix page 1527, which is their petition. Which volume is this? Volume 1. I believe. I'm sorry, volume 2. I apologize. Okay. Page 1527. In the petition, they mapped the elements. The elements that they mapped as the trigger, as you see at the middle of the page, is the actuator unit 14, actuator element 50, and element 51, actuator rod 152.  They do not include the valve head. Where is the figure for which this refers? That would refer to figures, for example, 12, 11, or 12 of the Chafin patent, Your Honor. Where do we find that? What page? It would be in volume 1. 172, appendix 172. So in particular, you could turn, for example, over to figure 9 on 175. That would be the actuator 150. But on that same page, Your Honor, the first that we talked about, at 1527, I think it's important to note that the vent seal is identified as the valve head. It's not mapped as a part of the trigger. Well, it could be both. I'm not seeing these numbers in figure 9. I'm not seeing 14, 50. That would be in a different embodiment. 50, for example, if you look at figure 6, Your Honor, you would see the T-shaped trigger of the first embodiment. 50 referring to the, if you will, the top of the T in figure 6. Where does the valve head have a different number? The valve head numbers in figure 6, Your Honor, would be, for example, 55, item 55. But I believe that the petition is what defines the scope of their claim, Your Honor. And that's what we responded to. They have got to make the argument, for example, that the valve head would be both. And that's not how they mapped it. The second point that I would make is that as you saw that T-shaped trigger arm where the valves come back this way, if we were to split that bar and to try and put this lost motion in it so that it would first pass a space so that things didn't happen automatically, all you're doing on that T-shape is you're now, on that T-shaped actuator, you're still moving those two valve heads simultaneously. You're not creating sequential opening. There's not substantial evidence to show the mapping of that version in figure 6 with the Albert reference to get lost motion. There's not substantial evidence for that position in the record.